**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

RWE RENEWABLES GMBH
RWE Platz 4
45141 Essen
Germany

&

RWE RENEWABLES IBERIA S.A.U.,
Pl. Catalunya, 1, 3-E (Ed. El Triangle)
08002 Barcelona

*Petitioners*,

v.

KINGDOM OF SPAIN,
Abogacia General del Estado
Calle Ayala, 5
28001 - Madrid
Spain

*Respondent*.

Civil Action No. _________

**PETITION TO ENFORCE ARBITRAL AWARD**


ALLEN & OVERY LLP

Patrick Pearsall
1101 New York Avenue, NW
Washington, DC 20005
Telephone: 202-683-3800
Facsimile: 202-683-3999

Bradley S. Pensyl (*pro hac vice* to be requested)
Laila Delimustafic (*pro hac vice* to be requested)
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300

*Attorneys for Petitioners RWE Renewables GmbH & RWE Renewables Iberia S.A.U.,*

For their Petition, Petitioners RWE Renewables GmbH and RWE Renewables Iberia, S.A.U.[1] state as follows:

## NATURE OF THE ACTION

1. Petitioners bring this action to enforce an arbitral award (the "Award") of €28,080,000 million, plus interest and costs, issued on December 18, 2020, in the International Centre for the Settlement of Investment Disputes ("ICSID") Case No. ARB/14/34 against Respondent, the Kingdom of Spain ("Spain"). A certified copy of the Award is attached as Exhibit 1 to the Declaration of Patrick Pearsall ("Pearsall Decl."), which is filed herewith.[2]

2. The Award was rendered in RWE's favor following arbitration proceedings (the "ICSID Proceedings") conducted in accordance with the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). A copy of the ICSID Convention is attached as Exhibit 2 to the Pearsall Declaration. The Award imposed pecuniary obligations on Spain in the amount of €28,080,000 million, together with interest on the award from June 30, 2014 at the rate of 2.07 percent per annum, compounded monthly. In addition, and beyond these monetary damages, the Award further imposed obligations on Spain to pay (i) 50 percent of RWE's legal fees and disbursements incurred in connection with the ICSID Proceedings and (ii) 100 percent of the total arbitrator fees and administrative expenses incurred in connection with the ICSID Proceedings, which together total €2,997,796.20.

3. To date, Spain has not paid any portion of the Award.

---

[1] The original claimants in the underlying ICSID arbitration were RWE Renewables GmbH's predecessors in interest, RWE Innogy GmbH, and Petitioner RWE Renewables Iberia S.A.U. under its former name, RWE Innogy Aersa, S.A.U. (collectively, and together with Petitioner RWE Renewables GmbH, "RWE"). As a result of a corporate name change and restructuring (described in greater detail in Paragraphs 6–7, *infra*), Petitioners now hold all rights and interests in the Award.

[2] All citations to the Award, which is attached as Exhibit 1 to the Pearsall Declaration, will be in the form of "Award ¶."

4. Pursuant to Article 54 of the ICSID Convention and 22 U.S.C. § 1650a, arbitral awards issued under the ICSID Convention are not subject to collateral attack and must be enforced in the same manner and given the same full faith and credit as if the award were a final judgment of a court in the United States.

5. Accordingly, Petitioners request that this Court: enter an order enforcing the Award in the same manner as a final judgment issued by a court in the United States, and enter judgment in Petitioners' favor in the amount of €28,080,000 million, together with (i) interest on the award from June 30, 2014 to date of payment, at the rate of 2.07 percent per annum, compounded monthly, (ii) 50 percent of Petitioners' legal fees and disbursements incurred in connection with the ICSID Proceedings, and (iii) 100 percent of the total arbitrator fees and administrative expenses incurred in connection with the ICSID Proceedings.

## THE PARTIES

6. Petitioner RWE Renewables GmbH is a private limited liability company incorporated under the laws of Germany. By virtue of a corporate restructuring, Petitioner RWE Renewables GmbH is the successor in interest to all of the rights in the Award previously held by RWE Innogy GmbH (the First Claimant in the ICSID proceedings). All of RWE Innogy GmbH's interests and rights in the Award have been assigned to Petitioner RWE Renewables GmbH.

7. Petitioner RWE Renewables Iberia, S.A.U. is a limited liability company incorporated under the laws of the Kingdom of Spain and was the Second Claimant in the ICSID proceedings. Prior to a corporate name change (and at the time the ICSID proceedings were commenced), Petitioner RWE Renewables Iberia, S.A.U. was known as RWE Innogy Aersa, S.A.U.

8. Together, Petitioners own all interests and rights with respect to the Award, including all rights to the proceeds of the Award and all rights to enforce the Award.

9. Respondent Spain, is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602–11. Spain signed the ICSID Convention on March 21, 1994, and deposited its instrument of ratification on August 18, 1994. The ICSID Convention entered into force for Spain on September 17, 1994.

**JURISDICTION AND VENUE**

10. This Court has subject matter jurisdiction over this action under the FSIA because this action is a "nonjury civil action against a foreign state" on a claim "with respect to which the foreign state is not entitled to immunity" under the FSIA. 28 U.S.C. § 1330(a).

11. Pursuant to Section 1605(a)(1) of the FSIA, Spain is not entitled to immunity from this Court's jurisdiction in an action to enforce an award issued pursuant to the ICSID Convention because Spain has waived any such immunity by agreeing to the ICSID Convention. *See Tatneft v. Ukraine*, No. 18-7057, 2019 WL 2563159, at *1–2 (D.C. Cir. May 28, 2019) (per curiam); *Blue Ridge Invs.*, *L.L.C. v. Republic of Argentina,* 735 F.3d 72, 84 (2d Cir. 2013) (holding that a foreign country waives sovereign immunity under the FSIA "by becoming a party to the ICSID Convention").

12. Further, pursuant to Section 1605(a)(6) of the FSIA, Spain is not immune from suit because this is an action to enforce an arbitral award governed by the ICSID Convention, which is a treaty in force in the United States for the recognition and enforcement of arbitral awards. *See Blue Ridge Invs., L.L.C.*, 735 F.3d at 85 ("To our knowledge, every court to consider whether awards issued pursuant to the ICSID Convention fall within the arbitral award exception [set forth in Section 1605(a)(6) of] the FSIA has concluded that they do."). Spain is also not immune from suit because this is an action to enforce an arbitral award issued pursuant to an arbitration agreement. *See* the Energy Charter Treaty ("ECT"), art. 26(3)(a), (4)(a)(i). A certified copy of the ECT is attached as Exhibit 3 to the Declaration of Patrick Pearsall ("Pearsall Decl.").

13. In addition, this Court also has subject matter jurisdiction pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce awards entered under the ICSID Convention.

14. This Court has personal jurisdiction over Spain pursuant to the FSIA, 28 U.S.C. § 1330(b).

15. Venue is proper in this Court pursuant to the FSIA, 28 U.S.C. § 1391(f)(4).

16. The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-307, does not apply to "enforcement of awards rendered pursuant to the [ICSID] convention." 22 U.S.C. § 1650a(a). As such, the FAA's jurisdictional requirements do not apply to this Action.

## THE DISPUTE AND THE AWARD

17. The Award arises out of RWE's investments in renewable energy ("RE") projects in Spain. Award ¶ 4; Decision on Jurisdiction, Liability, and Certain Issues of Quantum (the "ICSID Decision") ¶ 190. A copy of the ICSID Decision is attached as Exhibit 4 to the Pearsall Declaration.[3]

18. In the mid-1990s, Spain began to develop a "Special Regime" to encourage investment in its renewable energy generation sector. Award ¶ 128; *see e.g.*, *Id.* ¶¶ 129–210. Over the course of the next decade, Spain continued to enact legislation related to the Special Regime, *see Id.* ¶¶ 129–159, culminating in significant changes in 2007 when Spain enacted Royal Decree 661/2007, modifying the previous regulatory regime, to further attract investments in wind facilities and other forms of RE. *Id.* ¶¶ 159, 161–63, 165–67, 174–75, 202–205, 468, 516, 611. In reliance upon certain financial incentives and inducements offered by Spain pursuant to the Special Regime, RWE made substantial investments in RE projects in Spain, including by purchasing and developing sixteen wind farms and four hydroelectric plants in Spain. *Id.* ¶¶ 190–94, 205–210, 468. In total, RWE invested over €513 million

---

3 The ICSID Decision is an integral part of the Award and provides the factual and legal background of the dispute, along with the Tribunal's analysis and decision on the merits of the dispute. Award ¶ 6. All citations to the ICSID Decision, which is attached as Exhibit 4 to the Pearsall Declaration, will be in the form of "ICSID Decision ¶."

between 2001 and 2011 to purchase and develop these wind farm facilities and hydroelectric plants. *Id.* ¶¶ 190, 227.

19. RWE made these investments in three broad tranches: first in a series of transactions in 2001 to early 2004 (totaling in excess of €45,000,000), second in June 2008 (totaling €363,500,000), and the third in a series of transactions from December 2008 until December 2012 (totaling in excess of €102,000,000). *Id.* ¶ 191; *see also Id.* ¶¶ 191–209. The most substantial of the investments, was RWE's acquisition of six wind farms in June 2008 for €363,500,000. *Id.* ¶ 491. RWE relied on the stability of the regulatory regime established by Royal Decree 661/2007 in purchasing these six wind farms for €363,500,000 and in upgrading certain of the plants in 2009, which cost €6,800,000. *Id.* ¶¶ 491, 497. In total, RWE invested in excess of €513,000,000 in these RE projects. *Id.* 227.

20. Between 2012 and 2014, Spain adopted a series of laws revoking the economic incentives extended to RE investors such as RWE. *Id.* ¶¶ 211–27. Spain's policy reversal culminated in the implementation of an entirely new regulatory regime in 2014 that dismantled the legislation upon which RWE had relied in making their investments. *Id.* ¶¶ 211, 611–12, 617. The rescission of these incentives caused substantial harm to the value of the investments that RWE had made based on the system adopted by Spain. *Id.* ¶¶ 227–28, 612.

21. RWE's investments in wind power and hydroelectric projects were governed by the ECT, which is meant to establish "a legal framework in order to promote long-term cooperation in the energy field.'" *Id.* ¶ 250. Petitioners are incorporated under the laws of Germany and Spain which are contracting parties to both the ECT[4] and the ICSID Convention.[5]

[4] *Energy Charter Treaty Signatories / Contracting Parties*, INTERNATIONAL ENERGY CHARTER (February 18, 2019), https://energycharter.org/process/energy-charter-treaty-1994/energy-charter-treaty/signatories-contracting-parties/.

[5] List of Contracting States and Other Signatories of the Convention, ICSID (April 12, 2019), https://icsid.worldbank.org/en/Documents/icsiddocs/List%20of%20Contracting%20States%20and%20Other%20Signatories%20of%20the%20Convention%20-%20Latest.pdf.

22. Spain is a contracting party to both the ECT[6] and the ICSID Convention.[7] Spain consented to submit disputes arising under the ECT to arbitration under the ICSID Convention. *See* ECT, art. 26(3)(a), (4)(a)(i) (Pearsall Decl. Ex. 3).

23. On December 19, 2014, RWE filed its request for arbitration (the "Request for Arbitration") against Spain with ICSID. ICSID Decision ¶ 5. In the Request for Arbitration, RWE claimed that Spain's displacement of the legislative framework upon which RWE's investments depended violated Spain's obligation under Article 10(1) of the ECT to provide RWE's investments with fair and equitable treatment. *Id.* ¶ 117.

24. On December 23, 2014, the Secretary-General of ICSID registered the Request for Arbitration in accordance with Article 36(3) of the ICSID Convention. *Id.* ¶ 6. On March 23, 2015, a three-arbitrator ICSID arbitral tribunal (the "Tribunal") was duly constituted. *Id.* ¶ 10. On April 3, 2015, the three arbitrators accepted their respective appointments.

25. A hearing on the merits and jurisdiction (the "Hearing") was held before the Tribunal in Paris, France, from May 15, 2017 to May 19, 2017. *Id.* ¶ 74. Both Spain and the RWE were represented by counsel and fully participated in the Hearing. *Id.*

26. On December 30, 2019, the Tribunal ruled in favor of RWE after finding Spain liable for breaching Article 10(1) of the ECT with respect to certain investments. *Id.* ¶ 748.

27. On November 16, 2020, the Tribunal declared the proceedings closed. Award ¶ 19.

28. On December 18, 2020, the Tribunal issued the Award, awarding damages to RWE. *Id.* ¶ 42. The ICSID Decision issued on December 30, 2019 "constitutes an integral part" of the Tribunal's Award. Award ¶ 6. In its comprehensive 287-page Decision, the Tribunal found that Spain breached its

---

6 *Supra* n. 2.

7 *Supra* n. 3.

obligations under Article 10(1) of the ECT "to the extent that it has procured repayment by [Petitioners] of sums previously paid by [Spain] under the [prior] regime" and "the disproportionate nature of the new measure that it [] adopted." ICSID Decision ¶ 748; Award ¶¶ 92–96, 106.

29. In the Award, the Tribunal awarded RWE damages in the amount of €28,080,000, together with (i) interest on the award from June 30, 2014 to date of payment at the rate of 2.07 percent per annum, compounded monthly; (ii) 50 percent of RWE's legal fees and disbursements incurred in connection with the ICSID Proceedings in the amount of €2,373,909.24; and (iii) 100 percent of the total arbitrator fees and administrative expenses incurred in connection with the ICSID Proceedings, totalling $623,886.96. Award ¶ 149.

30. In accordance Article 52(5) of the ICSID Convention, when a party registers an Application for Annulment of an ICSID Award, the ICSID Committee will stay enforcement of the Award provisionally until the Committee issues a decision on whether to stay enforcement of the Award pending its Annulment decision. Spain registered an Application for Annulment of the Award on or around April 16, 2021. On April 19, 2021, the ICSID Committee issued its provisional automatic stay of enforcement of this Award. On November 22, 2021, the ICSID Committee issued an order lifting that stay of enforcement, conditioned on the provision of written undertakings by Petitioners. A copy of the ICSID Committee Decision on Stay of Enforcement is attached as Exhibit 5 to the Pearsall Declaration.

31. Petitioners are abiding by and fully comply with their obligations under the ICSID Convention—including the automatic stay that was triggered when Spain filed its annulment application in April 2021. Petitioners will refrain from moving for final judgment in this matter or take any other action toward enforcement of the Award until a final order lifting the stay is issued by the *ad hoc* committee that has been appointed within ICSID to consider Spain's application.

32. Once the provisional stay is lifted, in accordance with the ICSID Convention, the Award is immediately enforceable. ICSID Convention, art. 53 (Pearsall Decl. Ex. 2) (providing that "[t]he award shall be binding on the parties," and that in the absence of a stay, "[e]ach party shall abide by and comply with the terms of the award").

**LEGAL BASIS FOR RELIEF**

33. Article 54 of the ICSID Convention requires contracting states to "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention, art. 54 (Pearsall Decl. Ex. 2). The ICSID Convention also provides that "[a] Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgment of the courts of a constituent state." *Id.*

34. The United States is a contracting state to the ICSID Convention[8] and is therefore obligated to recognize and enforce the pecuniary obligations imposed by the Award as if it were a final judgment of a court of the United States. This obligation is set out in 22 U.S.C. § 1650a, which provides in relevant part:

> (a) An award of an arbitral tribunal rendered pursuant to chapter IV of the convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. § 1 *et seq*.) shall not apply to enforcement of awards rendered pursuant to the convention.

35. Arbitral awards issued against a foreign state pursuant to the ICSID Convention may be enforced by bringing a plenary action in federal court in compliance with the requirements for

[8] *Supra* n. 3.

commencing a civil action under the Federal Rules of Civil Procedure, and with the personal jurisdiction, service, and venue requirements of the FSIA. *See Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 49–50, 53 (D.D.C. 2015); *Micula v. Gov't of Romania,* 714 F. App'x 18, 21 (2d Cir. 2017); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100, 117–20 (2d Cir. 2017).

36. Awards issued pursuant to the ICSID Convention are not subject to collateral attack in enforcement proceedings under 22 U.S.C. § 1650a. "Member states' courts are . . . not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award; under the Convention's terms, they may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award." *Mobil Cerro Negro Ltd.*, 863 F.3d at 102; *Miminco, LLC v. Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218 (D.D.C. 2015) ("a court's confirmation of an ICSID award should entail nothing more than ministerial verification that the award is genuine"). The ICSID Convention therefore "reflects an expectation that the courts of a member nation will treat the award as final." *Id* (internal citations omitted); *see also id.* at 118 (noting that an ICSID award-debtor is not "permitted to make substantive challenges to the award"); ICSID Convention, arts. 53(1), 54(1) (Pearsall Decl. Ex. 2).

37. Consistent with this mandate, 22 U.S.C. § 1650a(a) provides that the FAA "shall not apply to enforcement of awards rendered pursuant to the convention," thereby making the FAA's defenses "unavailable to ICSID award-debtors in federal court enforcement proceedings." *Mobil Cerro Negro Ltd.*, 863 F.3d at 120–21.

38. District courts thus enforce ICSID awards without allowing substantive challenges to enforcement of the awards. *See, e.g. Duke Energy Int'l Peru Invs. No. 1, Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132–34 (D.D.C. 2012); *Republic of Panama v. Jurado*, No. 8:12-cv-1647 (M.D. Fla. June 13, 2013), ECF No. 18, 25.

**CAUSE OF ACTION AND REQUEST FOR RELIEF**

39. Petitioners restate and incorporate paragraphs 1 through 38 of the Petition as set forth fully herein.

40. Arbitral awards issued pursuant to the ICSID Convention are subject to mandatory enforcement in the courts of the United States, which must give those awards the same full faith and credit as a final judgment issued by a state court. 22 U.S.C. § 1650a(a).

41. The Award was rendered in accordance with the ICSID Convention against Spain and in Petitioners' favor.

42. Accordingly, Petitioners are entitled to an order (a) enforcing the Award in the same manner as a final judgment issued by a court of one of the several states, and (b) entering judgment in Petitioners' favor in the amount specified in the Award.

43. Petitioners respectfully request that the Court enter the order and judgment in Petitioners' favor in accordance with the currencies set forth in the Award.

44. In accordance with their obligations under the ICSID Convention, Petitioners will refrain from taking action toward enforcement of the Award until the stay is lifted by the *ad hoc* committee that has been appointed within ICSID to consider Spain's application. However, there is no reason to delay entering judgment in favor of Petitioners against Respondent.

45. Specifically, the Court should enter the following pecuniary obligations of the Award in euro: (i) Petitioners' monetary damages of €28,080,000; (ii) the interest owed by Spain on such damages, which is to be calculated at the rate of 2.07 percent, compounded monthly, from June 30, 2014 through the date of full payment of the Award; and (iii) 50% of the attorneys' fees and disbursements incurred by Petitioners' in the ICSID Proceedings, totalling €2,373,909.24 Award ¶ 149. The Court has authority to enter judgment in euros without conversion to American dollars, particularly when requested by the

award-creditor. *See, e.g. Liberty Media Corp. v. Vivendi Universal, S.A.*, No. 03 Civ. 2175 (SAS), 2013 WL 105776, at *2–3 (S.D.N.Y. Jan. 9, 2013); *see also Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018); *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013), *aff'd*, 603 F. App'x 1 (D.C. Cir. 2015).

46. The final component of the Award, the $623,886.96 total in arbitrator fees and administrative expenses incurred by Petitioners in connection with the ICSID Proceedings, was delineated in the Award in dollars. Award ¶ 149. As such, Petitioners request that the Court enter this component of the Award in dollars.

47. Petitioners are thus entitled to an order enforcing such arbitral award as a judgment pursuant to Article 54 of the ICSID Convention, 22 U.S.C. § 1650a, and entering judgment thereon in Petitioners favor (i) in the amount of amount of €28,080,000; together with (ii) interest on the award from June 30, 2014 to date of payment at the rate of 2.07 percent per annum, compounded monthly; (iii) 50 percent of Petitioners' legal fees and disbursements incurred in connection with the ICSID Proceedings in the amount of €2,373,909.24; and (iv) 100 percent of the total arbitrator fees and administrative expenses incurred in connection with the ICSID Proceedings, totalling $623,886.96.

WHEREFORE, Petitioners respectfully request that the Court enter judgment in favor of Petitioners and against Respondent and request that the Court issue an order:

(a) Recognizing and enforcing the Award in the same manner as a final judgment issued by a court of one of the several states; and

(b) Entering judgment against Spain and in Petitioners' favor in the amount of €28,080,000, together with interest on the award from June 30, 2014 to date of payment at the rate of 2.07 percent per annum, compounded monthly; and

(c) Entering judgment against Spain and in Petitioners' favor in the amount of €2,997,796.20 (50 percent of Petitioners' legal fees and disbursements incurred in connection with the ICSID Proceedings and 100 percent of the total arbitrator fees and administrative expenses incurred in connection with the ICSID Proceedings).

Dated: Washington, D.C.
December 9, 2021

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ *Patrick Pearsall*

Patrick Pearsall
1101 New York Avenue, NW
Washington, DC 20005
Telephone: 202-683-3800
Facsimile: 202-683-3999

Bradley S. Pensyl (*pro hac vice to be requested*)
Laila Delimustafic (*pro hac vice to be requested*)
1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300

*Attorneys for Petitioners RWE Renewables GmbH & RWE Renewables Iberia S.A.U.*